6) <u>Representations of the Holder</u>. The Holder hereby represents and warrants that:

   (a) <u>Purchase Entirely for Own Account</u>. This Warrant and the Securities issuable upon the conversion of this Warrant to be received by the Holder will be acquired for investment for the Holder's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and the Holder has not present intention of selling, granting any participation in, or otherwise distributing the same. The Holder does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participation to such person or to any third person, with respect to the Warrant or any of the Securities issuable upon the conversion of the Warrant.

   (b) <u>Investment Experience</u>. The Holder is an "accredited" investor under all applicable laws and invests in securities of companies in the development stage and acknowledges that is has the capacity to protect its own interests, can bear the economic risk of its investment, and has such knowledge and experience in financial or business matters that it is capable of evaluating the merits and risks of the investment in this Warrant and the Securities issuable upon the conversion of this Warrant. If other than an individual, the Holder also represents it has not been organized for the purpose of acquiring this Warrant or the Securities issuable upon the conversion of this Warrant.

   (c) <u>Restricted Securities</u>. The Holder understands that this Warrant and the Securities issuable upon the conversion of this Warrant are characterized as "restricted securities" under the federal securities laws inasmuch as they are being acquired from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such securities may be resold without registration under the Act, only in certain limited circumstances. The Holder is familiar with SEC Rule 144, as presently in effect, and understands the resale limitations imposed thereby and by the Act.

7. <u>Exercise of Warrant</u>. This Warrant may be exercised in whole or in part by the Holder, at any time and from time to time after the date hereof and prior to the Termination Date, by the surrender of this Warrant, together with the Notice of Exercise, duly completed and executed at the principal office of the Company, specifying the portion of the Warrant to be exercised and accompanied by payment in full of the Warrant Price in cash or by check with respect to the shares of the Warrant Stock being purchased. This Warrant shall be deemed to have been exercised immediately prior to the close of business on the date of its surrender for exercise as provided above, and the person entitled to receive the shares of Warrant Stock issuable upon such exercise shall be treated for all purposes as the Holder of such shares of record as of the close of business on such date. As promptly as practicable after such date, the Company shall issue and deliver to the person or persons entitled to receive the same a certificate or certificates for the

number of full shares of Warrant Stock issuable upon such exercise. If the Warrant shall be exercised for less than the total number of shares of Warrant Stock then issuable upon exercise, promptly after surrender of the Warrant upon such exercise, the Company will execute and deliver a new Warrant, dated the date hereof, evidencing the right of the Holder to the balance of the Warrant Stock purchasable hereunder upon the same terms and conditions set forth herein.

8.   Valuation. For purposes of this Section 8, the fair market value of one share of Common Stock as of a particular date shall be determined as follows: if there is no active public market value, the value shall be determined by an appraisal conducted by a certified independent third-party appraiser, with such appraised value reduced by the Company's long-term debt as shown on its balance sheet as of the close of the most recent month, and divided by the fully-diluted number of Outstanding Shares of Common Stock to determine a per share value. The first such appraisal shall occur on or about March 31, 2009, and to the extent there are still Warrants outstanding, a second appraisal shall occur on or about March 31, 2010, and as necessary the third and final appraisal shall occur on or about March 31, 2011. Notwithstanding the foregoing, if, as of the date of determination of the fair market value hereunder, the Company has entered into a definitive agreement for a transaction described in Section 5(c)(i) or 5(c)(ii), the fair market value of one share of Common Stock shall be the fair market value of the shares of Common Stock ascribed to the Common Stock in such transaction.

9.   Minimum Payment Option. In lieu of exercising this Warrant pursuant to Section 7, the Holder may elect (the "Minimum Payment Option") to receive a cash payment (the "Minimum Payment Option Amount"), and the Company agrees to pay an amount equal to Twenty Five Thousand Dollars ($25,000) for each Fifty Thousand Dollars ($50,000) (or portion thereof rounded upwards) such Holder has advanced to the Company pursuant to the Loan Documents. Such Minimum Payment Option may be exercised by Holder at any time (through and including the Termination Date) on and after the earlier to occur of (x) April 1, 2009 and (y) a Company Sale. In such an event, the Holder will provide written notice to the Company regarding election of the Minimum Payment Option, and will surrender the Warrant after Company's cash payment of the Minimum Payment Option Amount, which cash payment must be made no later than 30 days after receipt of notice.

10.  Piggyback Rights. If at any time the Company proposes to prepare and file with the Securities and Exchange Commission (the "SEC") one or more registration statements or amendments, including post-effective amendments, or supplements thereto covering any equity or debt securities of the Company, or any such securities of the Company held by its stockholders, other than in connection with a merger or acquisition or pursuant to a registration statement on Form S-4 or Form S-8 or an successor form (for purposes of this Section 1, collectively, a "Piggyback Registration Statement"), the Company will give written notice of its intention to do so by registered or certified mail ("Notice"), at least twenty (20)

business days prior to the filing of each such Piggyback Registration Statement, to the Holder. The Company shall include all Warrant Stock in the proposed Piggyback Registration Statement with respect to which the Company has received written requests for inclusion therein within 20 days after the receipt of the Company's notice, and the Company shall use its best efforts to cause such Piggyback Registration Statement to be declared effective by the SEC, so as to permit the public resale by the requesting Holders of their Warrant Stock pursuant thereto, at the Company's sole cost and expense and at no cost or expense to the requesting Holder (other than any underwriting or other commissions, discounts or fees of any counsel or advisor to the Holder which shall be payable by the Holder). The Company shall not be required to include the Warrant Stock in more than one registration statement filed with the SEC.

11. Adjustments to Warrant Stock and Minimum Payment Option Amount Upon Payment Default under the Loan Agreement. Upon the occurrence of an Event of Default (defined in the Loan Agreement) under section 6(a) of the Loan Agreement and such Event of Default continues (a) for more than ten (10) days past the due date therefor, then, in such event, (i) the number of Warrant Stock shares issuable hereunder to the Holder shall be increased by 25% and (ii) the Minimum Payment Option amount shall be increased by 25% and (b) for more than ninety (90) days past the due date therefor (or an additional Event of Default under section 6(a) of the Loan Agreement occurs thereafter, regardless of any cure of any previous Event of Default), then, in such event, (i) the number of Warrant Stock shares issuable hereunder to the Holder shall be increased by 200% and (ii) the Minimum Payment Option amount shall be increased by 200%.

12. Redemption.

(a) Election by Holder. At any time after the earlier to occur of (x) March 31, 2009 and (y) a Company Sale, the Holder may, by written notice to the Company (a "Redemption Request") but no more than once per calendar year, request that the Company redeem all or some portion of the Warrants. The Company shall complete such redemption, by payment to the Holder, at the Redemption Price (as defined below), against delivery by the Holder of this Warrant, within 30 days after the Redemption Request, if (A) below, or in four (4) equal payments, the first within 30 days after the Redemption Request and the remaining three (3) each to occur ninety (90) days after the previous payment, if (B) below. The "Redemption Price" shall be equal to the greater of (A) the Minimum Payment Option Amount or (B) (i) the difference between (y) the fair market value (determined as the greater of (1) the purchase price (adjusted by the level of long-term debt as reported on the most recent month's balance sheet in the event of an asset sale) to paid by the purchasers in the pending Company Sale and (2) the most recent appraisal, adjusted by the level of long-term debt as reported on the most recent month's balance sheet, pursuant to Section 8 hereof) of a share of Common Stock, and (z)

the Warrant Price, multiplied by (ii) the number of shares of Warrant Stock underlying the Warrants covered by the Redemption Request.

(b) Election by Company. At any time after the earlier to occur of (x) March 31, 2010 and (y) a Company Sale, the Company may, by written notice to the Holder (a "Call Notice"), require that the Holder permit the redemption of all or some portion of this Warrant, upon the terms and conditions set forth in this Section 12(b). The Company shall complete such redemption by payment to the Holder the Call Price (as defined below), against delivery by the Holder of this Warrant, within 30 days after the Call Notice if (A) below or in four (4) equal payments, the first within 30 days after receipt of the Call Notice, and the remaining three (3) each to occur ninety (90) days after the previous payment, if (B) below. The "Call Price" shall be equal to the greater of (A) the Minimum Payment Option Amount or (B) (i) the difference between (y) the fair market value (determined as the greater of (1) the purchase price (adjusted by the level of long-term debt as reported on the most recent month's balance sheet in the event of an asset sale) to be paid by the purchasers in the pending Company Sale and (2) the most recent appraisal, adjusted by the level of long-term debt as reported on the most recent month's balance sheet, pursuant to Section 8 hereof) of a share of Common Stock, and (z) the Warrant Price, multiplied by (ii) the number of shares of Warrant Stock underlying the Warrants covered by the Call Notice.

13. Transfer of Warrant. This Warrant may be transferred or assigned by the Holder hereof in whole or in part upon notice to the Company.

14. Termination. This Warrant shall terminate on the Termination Date.

15. Miscellaneous. This Warrant shall be governed by the laws of the State of Georgia, as such laws are applied to contracts to be entered into and performed entirely in Georgia. The headings in this Warrant are for purposes of convenience and reference only, and shall not be deemed to constitute a part hereof. Neither this Warrant nor any term hereof may be changed or waived orally, but only by an instrument in writing signed by the Company and the Holder of this Warrant. All notices and other communications from the Company to the Holder of this Warrant shall be delivered personally or mailed by first class mail, postage prepaid, to the address furnished to the Company in writing by the last Holder of this Warrant who shall have furnished an address to the Company in writing, and if mailed shall be deemed given three days after deposit in the United States mail.

*[signatures contained on the next page]*

8

IN WITNESS HEREOF, the Company has duly caused this Warrant to be signed in its name and on its behalf by its duly authorized officers as of the date hereof.

ISSUED:   March 26, 2007

Brandywine Health Services of Mississippi, Inc.
d/b/a Choctaw County Medical Center (and nursing home)

By: _____

Name: _____

Title: _____

ACKNOWLEDGED AND AGREED:

By:_____
        PWP Investments, LLC

        Warrant Holder

8

IN WITNESS HEREOF, the Company has duly caused this Warrant to be signed in its name and on its behalf by its duly authorized officers as of the date hereof.

ISSUED:   March 26, 2007

Brandywine Health Services of Mississippi, Inc.
d/b/a Choctaw County Medical Center (and nursing home)

By:_____

Name:_____

Title:_____

ACKNOWLEDGED AND AGREED:

By:_____
    PWP Investments, LLC

        Warrant Holder

EXHIBIT A

GUARANTY

THIS GUARANTY (this "Guaranty") is made as of December 20, 2007, by JEFFREY A. MORSE (the "Guarantor"), in favor of the Lenders (as defined below), under the Loan Agreement referred to below;

WITNESSETH

WHEREAS, BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC., as borrower (the "Borrower") and the following lenders are parties to that certain Loan Agreement dated as of March 26, 2007 (as amended or otherwise modified from time to time, the "Loan Agreement"; along all other lenders party to the Loan Agreement from time to time, the "Lenders"): Philip A. Marsden; Donald R. Millard; Hoppy Enterprises, LLC; Marshall B. Hunt; Olin Garwood Lippincott; and PWP Investments, LLC;

WHEREAS, it is required under the terms of that certain Amendment Agreement, dated as of even date herewith, among Borrower and Lenders (the "Amendment"), that the Guarantor execute and deliver this Guaranty whereby the Guarantor shall guarantee the payment when due of all principal and interest on the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time;

WHEREAS, in consideration of the financial and other support that Borrower has provided, and such financial and other support as Borrower may in the future provide, to Guarantor, whether directly or indirectly, and in order to induce the Lenders to enter into the Amendment, the Guarantor is willing to guarantee all principal and interest on the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time; and

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1. Definitions. Terms defined in the Loan Agreement and not otherwise defined herein have, as used herein, the respective meanings provided for therein.

SECTION 2. Representations and Warranties. The Guarantor represents and warrants that:

(a)     this Guaranty has been duly and validly executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, reorganization or moratorium or other similar laws relating to the enforcement of creditors' rights generally and by general equitable principles.

(b)     neither the execution and delivery by it of this Guaranty nor compliance with the terms and provisions hereof by the Guarantor will conflict with or result in a breach of, or require any consent under, any applicable law or regulation, or any order, writ, injunction or decree of any court or governmental authority or agency, or any material agreement or instrument to which it is a party or by which it is bound or to which it is subject, or constitute a default under any such agreement or instrument, or result in the creation or imposition of any lien upon any of its revenues or assets pursuant to the terms of any such agreement or instrument.

(c)     after giving effect to the execution and delivery of the Loan Documents to which it is a party and the incurring of its obligations hereunder, it will not be "insolvent," within the meaning of such term as defined in § 101 of Title 11 of the United States Code or § 2 of either the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act, as each is amended from time to time, or be unable to pay its debts generally as such debts become due, or have an unreasonably small capital to engage in any business or transaction, whether current or contemplated.

SECTION 3.  The Guaranty.  The Guarantor hereby unconditionally guarantees the full and punctual payment (whether at stated maturity, upon acceleration or otherwise) of all principal and interest on the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time (collectively, the "Obligations"). Upon failure by Borrower to pay punctually any such Obligations, the Guarantor agrees that it shall forthwith on demand pay the amount not so paid at the place and in the manner specified the Loan Agreement, the Term Notes, the Warrant Agreements or any of the other Loan Documents, as the case may be. This Guaranty is a guaranty of full payment, observance and performance and not of collectibility and in no way conditional or contingent. Without limiting the generality of the foregoing, this Guaranty is in no way conditioned upon any requirement that Lender first attempt to obtain or collect payment, or seek observance or performance, or any of the Obligations from any person or entity which is or may become directly or indirectly liable or responsible for any of the Obligations, or resort to any other collateral or security or other means of obtaining or collecting payment or seeking observance or performance of any of the Obligations shall give rise to a separate cause of action under this guaranty and separate suits, actions or proceedings any be brought hereunder as and when any such cause of action arises.

SECTION 4.  Guaranty Unconditional.  The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged or otherwise affected by:

(i) any extension, renewal, settlement, compromise, waiver or release in respect of any obligation of Borrower or any other guarantor of the Obligations (each, a "Loan Party") under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, by operation of law or otherwise or any obligation of any other guarantor of any of the Obligations; (ii) any modification or amendment of or supplement to the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents; (iii) any release, subordination nonperfection or invalidity of any part of any collateral securing the Obligations or any other direct or indirect security for any obligation of any of the Loan Parties under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, or any obligations of any other guarantor of any of the Obligations; (iv) any change in the corporate structure or ownership of any of the Loan Parties or any other guarantor of the Obligations, or any insolvency, bankruptcy, reorganization or other similar proceeding affecting any of the Loan Parties, or any other guarantor of the Obligations, or its assets or any resulting release or discharge of any obligation of any of the Loan Parties, or any other guarantor of any of the Obligations; (v) the existence of any claim, setoff or other rights which any of the Guarantors may have at any time against any of the Loan Parties, or any other guarantor of any of the Obligations, the Lenders, or any other person or entity, whether in connection herewith or any unrelated transactions, provided that nothing herein shall prevent the assertion of any such claim by separate suit or compulsory counterclaim; (vi) any invalidity or unenforceability relating to or against any of the Loan Parties, or any other guarantor of any of the Obligations, for any reason related to the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, or any other guaranty, or any provision of applicable law or regulation purporting to prohibit the payment by any of the Loan Parties, or any other guarantor of the Obligations, of the principal of or interest on any Loan or other Obligations under the Loan Agreement or any other Loan Document; (vii) any other act or omission to act or delay of any kind by any of the Loan Parties, or any other guarantor of the Obligations, the Lenders or any other person or entity or any other circumstance whatsoever which might, but for the provisions of this SECTION, constitute a legal or equitable discharge of the obligations of any Guarantor hereunder; or (viii) any and all defenses based on

suretyship or any other applicable law, including without limitation all rights and defenses arising out of (a) an election of remedies by the Lenders even though that election of remedies may have destroyed rights of subrogation and reimbursement against any Loan Party or Guarantor by operation of law or otherwise, (b) protections afforded to any Loan Party or Guarantor pursuant to antideficiency or similar laws limiting or discharging any Loan Party's or Guarantor's obligations to the Lenders, (c) the failure to notify any Loan Party or Guarantor of the disposition of any property securing the obligations of any Loan Party or Guarantor, (d) the commercial reasonableness of such disposition or the impairment, however caused, of the value of such property, or (e) any duty of the Lenders (should such duty exist) to disclose to any Loan Party or Guarantor any matter, fact or thing related to the business operations or condition (financial or otherwise) of any Loan Party or Guarantor or its affiliates or property, whether now or hereafter known by the Lenders.

SECTION 5. Discharge Only Upon Payment In Full; Reinstatement In Certain Circumstances. The Guarantor's obligations hereunder shall remain in full force and effect until all Obligations shall have been paid in full and the commitments under the Loan Agreement shall have terminated or expired. If at any time any payment of any of the Obligations is rescinded or must be otherwise restored or returned upon the insolvency, Bankruptcy or reorganization of Borrower or otherwise (whether by demand, settlement, litigation or otherwise), the Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

SECTION 6. Waiver of Notice by the Guarantor. The Guarantor irrevocably waives acceptance hereof, presentment, demand, protest and, to the fullest extent permitted by law, any notice not provided for herein, as well as any requirement that at any time any action be taken by any party against Borrower, any other guarantor of the Obligations, or any other party.

SECTION 7. Stay of Acceleration. If acceleration of the time for payment of any amount payable by Borrower under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents is stayed upon the insolvency, Bankruptcy or reorganization of Borrower, all such amounts otherwise subject to acceleration under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents shall nonetheless be payable by the Guarantor hereunder forthwith on demand by the Lenders.

SECTION 8. Notices. All notices, requests and other communications to any party hereunder shall be given or made by telecopier or other writing and telecopied or mailed or delivered to the intended recipient at its address or telecopier number set forth on the signature pages hereof or such other address or telecopy number as such party may hereafter specify for such purpose by notice to the Lenders in accordance with the provisions of the Loan Agreement. Except as otherwise provided in this Guaranty, all such communications shall be deemed to have been duly given when transmitted by telecopier, or personally delivered or, in the case of a mailed notice, 72 hours after such communication is deposited in the mails with first class postage prepaid, in each case given or addressed as aforesaid.

SECTION 9. No Waivers. No failure or delay by the Lenders in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies provided in this Guaranty, the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents shall be cumulative and not exclusive of any rights or remedies provided by law.

SECTION 10. Successors and Assigns. This Guaranty is for the benefit of the Lenders and their respective successors and assigns and in the event of an assignment of any amounts payable under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, the rights hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness. This Guaranty may not be assigned by the Guarantor without the prior written consent of

the Lenders (given in compliance with the terms of the Loan Agreement), and shall be binding upon the Guarantor and its successors, estate, and permitted assigns.

SECTION 11. Changes in Writing. Neither this Guaranty nor any provision hereof may be changed, waived, discharged or terminated orally, but only in writing signed by the Guarantor and the Lenders and otherwise in compliance with the terms of the Loan Agreement.

SECTION 12. Governing Law. This Guaranty and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Georgia.

SECTION 13. Jurisdiction and Venue. In the event that legal action is instituted to enforce or interpret this Guaranty, or to collect the Term Loan or any other amount due under the Loan Documents, the Guarantor on behalf of itself and its successors and assigns, consents to and by execution of this Guaranty submit itself to, the jurisdiction of the courts of the State of Georgia, and notwithstanding the place of business of the Guarantor or the place of execution of this Guaranty or any of the other Loan Documents, any litigation relating to this Guaranty and to any of the other Loan Documents, whether arising in contract or tort, by statute or otherwise, shall be brought in (and, if brought elsewhere, may be transferred to ) a state court of competent jurisdiction in Dekalb County, Georgia.

SECTION 14. Taxes, etc. All payments required to be made by the Guarantor hereunder shall be made without setoff or counterclaim and free and clear of and without deduction or withholding for or on account of, any present or future taxes, levies, imposts, duties or other charges of whatsoever nature imposed by any government or any political or taxing authority.

SECTION 15. Subrogation. Each Guarantor hereby agrees that it will not exercise any rights which it may acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, unless and until all of the Obligations shall have been paid in full. If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid in full, such amount shall be held in trust for the benefit of the Lenders and shall forthwith be paid to the Lenders to be credited and applied upon the Obligations, whether matured or unmatured, in accordance with the terms of the Loan Agreement.

10

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed, under seal, by its authorized officer as of the date first above written.

_____  (SEAL)
Jeffrey A. Morse

Address:
413 Bluewater Court
Berlin, MD  21811

COPY

## IN THE STATE COURT OF DEKALB COUNTY
### STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R. )
MILLARD, HOPPY ENTERPRISES, LLC, )
MARSHALL B. HUNT, OLIN )
GARWOOD LIPPINCOTT and PWP )
INVESTMENTS, LLC, )
    )
    Plaintiffs, )    Civil Action File No. 09A09420-6
    )
v. )
    )
BRANDYWINE HEALTH SERVICES OF )
MISSISSIPPI, INC., d/b/a CHOCTAW )
COUNTY MEDICAL CENTER and )
JEFFREY A. MORSE, )
    )
    Defendants. )

### STIPULATION EXTENDING TIME FOR DEFENDANTS
### TO RESPOND TO PLAINTIFFS' COMPLAINT

Plaintiffs Philip A. Marsden, Donald R. Millard, Hoppy Enterprises, LLC, Marshall B. Hunt,

Olin Garwood Lippincott and PWP Investments ("Plaintiffs") and Defendants Brandywine Health

Services of Mississippi, Inc., d/b/a Choctaw County Medical Center and Jeffrey A. Morse

("Defendants"), by and through their respective counsel of record, hereby stipulate and agree that

Defendants shall have through and including August 18, 2009 to move, answer, defend, object, or

otherwise plead in response to Plaintiffs' Complaint.

Stipulated and agreed to this 29th day of July, 2009 by:

STATE COURT OF
DEKALB COUNTY, GA

2009 JUL 29 PM 12: 19

FILED

1235358_1

BURR & FORMAN LLP

William C. Collins, Jr., Esq.
Georgia Bar No. 178847
John Michael Kearns, Esq.
Georgia Bar No. 142438
Suite 1100
171 17th Street, N.W.
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

**Attorneys for Plaintiffs**

PARKER HUDSON RAINER & DOBBS LLP

Ronald T. Coleman, Jr., Esq.
Georgia Bar No. 177655
C. Melissa Ewing, Esq.
Georgia Bar No. 253383
285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

**STIPULATION EXTENDING TIME FOR DEFENDANTS TO RESPOND TO**

**PLAINTIFFS' COMPLAINT** upon all parties in this matter by depositing a true copy of same

in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr& Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363
> Promenade II, Suite 2323
> 1230 Peachtree Street, NE
> Atlanta, Georgia 30309

This 29th day of July, 2009.

Ronald T. Coleman, Jr.
Georgia Bar No. 177655

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R.        )
MILLARD, HOPPY ENTERPRISES, LLC,    )
MARSHALL B. HUNT, OLIN              )
GARWOOD LIPPINCOTT and PWP          )
INVESTMENTS, LLC,                   )
                                    )
    Plaintiffs,                   )   Civil Action File No. 09A09420-6
                                    )
v.                                  )
                                    )
BRANDYWINE HEALTH SERVICES OF       )
MISSISSIPPI, INC., d/b/a CHOCTAW    )
COUNTY MEDICAL CENTER and           )
JEFFREY A. MORSE,                   )
                                    )
    Defendants.                   )

### STIPULATION EXTENDING TIME FOR DEFENDANTS
### TO RESPOND TO PLAINTIFFS' COMPLAINT

    Plaintiffs Philip A. Marsden, Donald R. Millard, Hoppy Enterprises, LLC, Marshall B. Hunt,

Olin Garwood Lippincott and PWP Investments ("Plaintiffs") and Defendants Brandywine Health

Services of Mississippi, Inc., d/b/a Choctaw County Medical Center and Jeffrey A. Morse

("Defendants"), by and through their respective counsel of record, hereby stipulate and agree that

Defendants shall have through and including August 21, 2009 to move, answer, defend, object, or

otherwise plead in response to Plaintiffs' Complaint.

    Stipulated and agreed to this 18th day of August, 2009 by:

BURR & FORMAN LLP                    PARKER HUDSON RAINER & DOBBS LLP


William C. Collins, Jr.    /CME          C. Melissa Ewing
_____    with express  _____
William C. Collins, Jr., Esq.  permission Ronald T. Coleman, Jr., Esq.
Georgia Bar No. 178847                   Georgia Bar No. 177655
John Michael Kearns, Esq.                C. Melissa Ewing, Esq.
Georgia Bar No. 142438                   Georgia Bar No. 253383
Suite 1100                               285 Peachtree Center Avenue, N.E.
171 17th Street, N.W.                    1500 Marquis Two Tower
Atlanta, Georgia 30363                   Atlanta, Georgia 30303
Telephone: (404) 815-3000                Telephone: (404) 523-5300
Facsimile: (404) 817-3244                Facsimile: (404) 522-8409

**Attorneys for Plaintiffs**              **Attorneys for Defendants**

1235358_1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

**STIPULATION EXTENDING TIME FOR DEFENDANTS TO RESPOND TO**

**PLAINTIFFS' COMPLAINT** upon all parties in this matter by depositing a true copy of same

in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr& Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363

This 18th day of August, 2009.

*C. Melissa Ewing*

C. Melissa Ewing
Georgia Bar No. 253383

1255820_1

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R. )
MILLARD, HOPPY ENTERPRISES, LLC, )
MARSHALL B. HUNT, OLIN )
GARWOOD LIPPINCOTT and PWP )
INVESTMENTS, LLC, )
                              )
      Plaintiffs, )    Civil Action File No. 09A09420-6
                              )
v. )
                              )
BRANDYWINE HEALTH SERVICES OF )
MISSISSIPPI, INC., d/b/a CHOCTAW )
COUNTY MEDICAL CENTER and )
JEFFREY A. MORSE, )
                              )
      Defendants. )

### STIPULATION EXTENDING TIME FOR DEFENDANTS
### TO RESPOND TO PLAINTIFFS' COMPLAINT

Plaintiffs Philip A. Marsden, Donald R. Millard, Hoppy Enterprises, LLC, Marshall B. Hunt,

Olin Garwood Lippincott and PWP Investments ("Plaintiffs") and Defendants Brandywine Health

Services of Mississippi, Inc., d/b/a Choctaw County Medical Center and Jeffrey A. Morse

("Defendants"), by and through their respective counsel of record, hereby stipulate and agree that

Defendants shall have through and including September 16, 2009 to move, answer, defend, object, or

otherwise plead in response to Plaintiffs' Complaint.

Stipulated and agreed to this 21st day of August, 2009 by:

BURR & FORMAN LLP

PARKER HUDSON RAINER & DOBBS LLP

*William C. Collins, Jr.*  /  one with permission

*C. Melissa Ewing*

William C. Collins, Jr., Esq.
Georgia Bar No. 178847
John Michael Kearns, Esq.
Georgia Bar No. 142438
Suite 1100
171 17th Street, N.W.
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

**Attorneys for Plaintiffs**

Ronald T. Coleman, Jr., Esq.
Georgia Bar No. 177655
C. Melissa Ewing, Esq.
Georgia Bar No. 253383
285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

**Attorneys for Defendants**

1259540_1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

**STIPULATION EXTENDING TIME FOR DEFENDANTS TO RESPOND TO**

**PLAINTIFFS' COMPLAINT** upon all parties in this matter by depositing a true copy of same

in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr & Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363

This 21st day of August, 2009.

C. Melissa Ewing
Georgia Bar No. 253383

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| PHILIP A. MARSDEN, DONALD R. MILLARD, HOPPY ENTERPRISES, LLC, MARSHALL B. HUNT, OLIN GARWOOD LIPPINCOTT and PWP INVESTMENTS, LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC., d/b/a CHOCTAW COUNTY MEDICAL CENTER and JEFFREY A. MORSE,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action File No. 09A09420<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANTS

Defendants Brandywine Health Services of Mississippi, d/b/a Choctaw County Medical Center and Jeffrey A. Morse (collectively, "Defendants") hereby file their answer, defenses, and counterclaims in response to Plaintiffs' Complaint (the "Complaint") and show the Court as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by terms of the relevant agreements and amendments thereto.

### THIRD DEFENSE

Some or all of Plaintiffs' claims are barred by the doctrines of waiver, acquiesence, ratification, estoppel, release, and/or unclean hands.

## FOURTH DEFENSE

Plaintiffs' claims are barred by Georgia's usury laws.

## FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the defense of failure of consideration.

## SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the defense of illegality.

## SEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the defense of unconscionability.

## EIGHTH DEFENSE

Plaintiffs have failed to properly plead a claim for attorney's fees.

## NINTH DEFENSE

Defendants expressly reserve, and do not intend to waive, any rights they might have to remove this action to federal court based on facts that might subsequently become known to it regarding the nature of Plaintiffs' claims, including without limitation the residencies of each Plaintiff (which information is not set forth in Plaintiffs' Complaint). All answers to the specific allegations of the Complaint are made subject to and without waiving this defense and reservation of rights.

## ANSWER TO COMPLAINT ALLEGATIONS

For its specific answers to the allegations of Plaintiffs' complaint, Defendants state as follows:

1.

Defendants admit the allegations contained in the first three sentences of this paragraph.

Defendants deny the allegations contained in the last sentence of this paragraph.

2.

Defendants admit the allegations contained in the first two sentences of this paragraph.

Defendants deny the allegations contained in the last sentence of this paragraph.

3.

Defendants admit that Plaintiffs and Brandywine entered into a Loan Agreement on or

about March 26, 2007, and that Exhibit A appears to be a true and correct copy thereof.

Defendants further state that the Loan Agreement (including any subsequent amendments or

modifications) speaks for itself, and they deny any allegations that are inconsistent with said

document.

4.

Defendants admit that Brandywine executed and delivered Warrant Agreements dated

March 26, 2007 to each Plaintiff, and that Exhibits B through G appear to be true and correct

copies thereof. Defendants further state that the separate Warrant Agreements (including any

subsequent amendments or modifications) speak for themselves, and they deny any allegations

that are inconsistent with said documents.

5.

Defendants admit that Brandywine and Plaintiffs entered into an Amendment Agreement

on or about December 20, 2007, which amended both the Loan Agreement and the Warrant

Agreements. A true and correct copy of this Amendment Agreement is attached hereto as

Exhibit 1. Defendants further state that the Amendment Agreement speaks for itself, and they

deny any allegations that are inconsistent with said document.

6.

Defendants admit that Defendant Morse executed and delivered a Guaranty in favor of Plaintiffs, and that Exhibit H appears to be a true and correct copy thereof. Defendants further state that the Guaranty speaks for itself, and they deny any allegations that are inconsistent with said document.

7.

Defendants admit the allegations of this paragraph.

8.

Defendants state that the first sentence of Paragraph 8 references a letter (not attached) which speaks for itself. Defendants admit they have not paid the Minimum Payment Option amounts that Plaintiffs claim are due and owing. Defendants deny all remaining allegations of this paragraph.

9.

Defendants deny the allegations of this paragraph.

10.

Defendants admit that Plaintiffs have made a demand upon Defendant Morse, as guarantor, for payment of amounts Plaintiffs claim are owed, and that Defendants have not paid such amounts. Defendants deny that either of them owes any such amounts demanded previously or in Plaintiffs' Complaint.

11.

Defendants state that the first sentence of this paragraph refers to the terms of the Loan Agreement, which speaks for itself. The second and third sentences of this paragraph purport to

state legal matters or conclusions, to which no response is required.  To the extent any response

is required, Defendants deny the allegations of this paragraph and deny all liability to Plaintiffs.

## COUNT I – BREACH OF CONTRACT

### (Plaintiff Marsden against Brandywine)

12.

Defendants incorporate by reference herein their responses to paragraphs 1 through 11

above as if fully set forth herein.

13.

Defendants deny the allegations of this paragraph.

## COUNT II - BREACH OF CONTRACT

### (Plaintiff Millard against Brandywine)

14.

Defendants incorporate by reference herein their responses to paragraphs 1 through 13

above as if fully set forth herein.

15.

Defendants deny the allegations of this paragraph.

## COUNT III - BREACH OF CONTRACT

### (Plaintiff Hoppy against Brandywine)

16.

Defendants incorporate by reference herein their responses to paragraphs 1 through 15

above as if fully set forth herein.

17.

Defendants deny the allegations of this paragraph.

## COUNT IV – BREACH OF CONTRACT

### (Plaintiff Hunt against Brandywine)

18.

Defendants incorporate by reference herein their responses to paragraphs 1 through 17 above as if fully set forth herein.

19.

Defendants deny the allegations of this paragraph.

## COUNT V – BREACH OF CONTRACT

### (Plaintiff Lippincott against Brandywine)

20.

Defendants incorporate by reference herein their responses to paragraphs 1 through 19 above as if fully set forth herein.

21.

Defendants deny the allegations of this paragraph.

## COUNT VI – BREACH OF CONTRACT

### (Plaintiff PWP against Brandywine)

22.

Defendants incorporate by reference herein their responses to paragraphs 1 through 21 above as if fully set forth herein.

23.

Defendants deny the allegations of this paragraph.

### COUNT VII – BREACH OF GUARANTY
### (Plaintiff Marsden against Morse)

24.

Defendants incorporate by reference herein their responses to paragraphs 1 through 23 above as if fully set forth herein.

25.

Defendants deny the allegations of this paragraph.

### COUNT VIII – BREACH OF GUARANTY
### (Plaintiff Millard against Morse)

26.

Defendants incorporate by reference herein their responses to paragraphs 1 through 25 above as if fully set forth herein.

27.

Defendants deny the allegations of this paragraph.

### COUNT IX – BREACH OF GUARANTY

28.

Defendants incorporate by reference herein their responses to paragraphs 1 through 27 above as if fully set forth herein.

29.

Defendants deny the allegations of this paragraph.

### COUNT X – BREACH OF GUARANTY
### (Plaintiff Hunt against Morse)

30.

Defendants incorporate by reference herein their responses to paragraphs 1 through 29 above as if fully set forth herein.

31.

Defendants deny the allegations of this paragraph.

## COUNT XI – BREACH OF GUARANTY
### (Plaintiff Lippincott against Morse)

32.

Defendants incorporate by reference herein their responses to paragraphs 1 through 31

above as if fully set forth herein.

33.

Defendants deny the allegations of this paragraph.

## COUNT XII - BREACH OF GUARANTY
### (Plaintiff PWP Investments, LLC against Morse)

34.

Defendants incorporate by reference herein their responses to paragraphs 1 through 33

above as if fully set forth herein.

35.

Defendants deny the allegations of this paragraph.

## COUNT XIII – EXPENSES OF LITIGATION

36.

Defendants incorporate by reference herein their responses to paragraphs 1 through 35

above as if fully set forth herein.

37.

Defendants deny the allegations of this paragraph.

## GENERAL DENIAL

Defendants deny any and all allegations not expressly admitted herein. Defendants deny any allegations or conclusion contained in the headings in the Complaint. Defendants deny Plaintiffs' prayer for relief in all respects.

WHEREFORE, Defendants respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice and discharge Defendants from any liability thereunder, award Defendants their attorneys' fees and costs in this action, and award Defendants such other and further relief as is just, equitable and proper.

## COUNTERCLAIM

Defendants for their Counterclaim show the Court as follows:

### Parties and Jurisdiction

1.

Counterclaimant Brandywine is a foreign corporation with its principal place of business in Meridian, Mississippi. Counterclaimant Morse is a Maryland citizen.

2.

Plaintiffs are subject to the jurisdiction of this Court.

3.

Plaintiffs are subject to venue in this Court by having filed the original action here.

### Factual Background

4.

Defendants and Plaintiffs entered into the Loan Agreement pursuant to which each Plaintiff made a separate loan to Brandywine, for the separate loan amounts set forth in paragraph 7 of Plaintiffs' Complaint, which loans totalled $650,000.

5.

The Loan Agreement set forth a stated rate of interest of 12% per annum until payment in full of the principal amount of the loan.

6.

In addition to the 12% interest per annum stated rate of interest charged on the principal amount of the loan, the lenders each reserved additional charges in the total amount of $975,000 through the Minimum Payment Option in each of the separate Warrant Agreements, which were expressly acknowledged as part of the consideration for each lender's decision to loan the money under the Loan Agreement.

7.

Under the Warrant Agreements, a lender could purchase 30 shares of the company's common stock at a price of $0.01 per share. In lieu of purchasing the stocks, a lender could elect the Minimum Payment Option and receive a cash payment initially equal to $25,000 for each $50,000 the lender loaned.

8.

As amended, the Warrant Agreements provide that the lenders would receive an even greater fee of a 200% increase of the Minimum Payment Option if Brandywine failed to make any payment due under the Loan Agreement.

9.

Defendants paid off the entire amount of each separate loan including the full principal amount and interest at the stated rate totalling approximately $146,000.

10.

Subsequently, each Plaintiff elected the Minimum Payment Option under the Warrant Agreements. Each Plaintiff now claims entitlement to and has demanded the base Minimum Payment Option amount as well as a 200% increase of the Minimum Payment Option amount based upon Defendants' failure to timely pay the base Minimum Payment Option amount to Plaintiffs.

### Count I - Violation of Georgia's Usury Laws

11.

Defendants incorporate and reference their allegations in Paragraphs 1 through 10 above as if fully stated herein.

12.

Each of the separate loans from the Plaintiffs to Brandywine is subject to Georgia's usury statute at O.C.G.A. § 7-4-2, as well as Georgia's criminal usury statute at O.C.G.A.§ 7-4-18.

13.

Alternatively, even if the separate loans are treated as a single loan of $650,000, such loan is subject to Georgia's criminal usury statute at O.C.G.A. § 7-4-18.

14.

Pursuant to the Loan Agreement, the parties agreed to a stated 12% per annum rate of interest until payment in full of the principal amount of the loan. Defendants have paid the full principal amount of the loan as well as the stated per annum rate of interest.

15.

As express consideration for entering into the Loan Agreement, Plaintiffs entered into separate Warrant Agreements pursuant to which Plaintiffs could elect a Minimum Payment Option, which included a 200% increase of the base amount in the event of specific triggering

-11-

events. Such payments constitute interest within the meaning of Georgia' usury statutes identified above.

16.

By entering into these Warrant Agreements with the Minimum Payment Option and 200% escalation, Plaintiffs reserved or charged for the loans a rate of interest greater than 5 percent per month, either directly or indirectly, by contract, contrivance or device.

17.

The total interest for each separate loan, including the 200% increase contemplated and reserved at the time of contracting, was greater than 5 percent per month in violation of Georgia's criminal usury laws. In addition, the total interest for the combined loans, including the 200% increase contemplated and reserved at the time of contracting, was greater than 5 percent per month in violation of Georgia's usury laws. Therefore, the lenders anticipated and reserved charges of at least $1,131,000 for Brandywine's use of $650,000.

18.

Pursuant to the Loan Agreement and the Warrant Agreements as described above, Plaintiffs have violated O.C.G.A. 7-4-18, and Defendants have been injured as a result of Plaintiffs' violation. Therefore, the lenders must forfeit all interest obtained or sought on the loans, including any Minimum Payment Option amounts.

**Count II - Unconscionability**

19.

Defendants incorporate by reference the allegations in paragraph 1 through 18 above as if fully stated herein.

20.

-12-

Plaintiffs anticipated and reserved outrageous charges for the use of their money in connection with the loans at issue. Together the six lenders loaned a total amount of $650,000. In addition to the stated 12% interest per annum charged on the principal amount of the loan under the Loan Agreement, the lenders reserved an additional $975,000 through the Minimum Payment Option in the Warrant Agreements which were expressly acknowledged as part of the consideration for the lenders' decision to make the loans. Therefore, the lenders anticipated and reserved charges of at least $1,131,000 for Brandywine's use of $650,000.

21.

The interest charged by Plaintiffs on the loans at issue is thus unconscionable, and the Court should require Plaintiffs to forfeit all interest obtained on the loans, including any Minimum Payment Option amounts.

### Count III - Civil Conspiracy

22.

Defendants incorporate by reference the allegations contained in paragraphs 1 through 21 above as if fully stated herein.

23.

Plaintiffs acted in concert in committing the wrongful acts described above, as part of a conspiracy having a common purpose and intent to reserve and collect interest in violation of Georgia law. Each Plaintiff engaged in one or more acts in furtherance of this conspiracy.

24.

Based on their participation in this conspiracy, each Plaintiff is liable, jointly and severally, for the obligations of the others.

-13-

### Count IV – Violation of Georgia RICO

25.

Defendants incorporate by reference the allegations contained in paragraphs 1 through 24 above as if fully stated herein.

26.

The association in fact of one or more of the Plaintiffs is an enterprise within the meaning of O.C.G.A. §16-14-3(6). This enterprise was ongoing, involving repeated acts of racketeering activity that continued for more than two years.

27

During the relevant period, Plaintiffs conducted and participated in an enterprise engaged in the collection of an unlawful debt by reserving and attempting to collect interest at a rate greater than 5% per month on the loans to Brandywine as described above, in violation of Georgia usury law.

28.

During the relevant period, Plaintiffs in violation of O.C.G.A. § 16-14-4, conducted and participated in the conduct of the affairs of this enterprise, and acquired and maintained an interest in this enterprise, through a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(8). Plaintiffs operated through and used the enterprise to gain the means to devise and participate in a scheme to defraud Defendants of substantial sums of money as described above.

29.

In furtherance of the scheme described above, Plaintiffs have committed multiple indictable offenses constituting theft by taking, in violation of O.C.G.A. § 16-8-2, by taking

Defendants' property unlawfully in the form of unlawful interest payments under the Loan Agreement.

30.

Also, in furtherance of the scheme described above, Plaintiffs have committed multiple indictable offenses constituting mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

31.

More specifically, Plaintiffs have committed offenses under 18 U.S.C. § 1341 as follows:

(1)     During the relevant period, Plaintiffs devised or participated in a scheme or artifice to defraud and obtain substantial sums of money from Defendants by false pretenses and representations through the mailing of false and misleading documents to charge or collect usurious interest.

(2)     Each of the Plaintiffs acted willfully and with an intent to defraud or aided, abetted, counseled, commanded, induced, or procured the commission of the scheme or artifice to defraud.

(3)     Plaintiffs caused numerous documents related to the Loan Agreement, the Warrant Agreements, other Loan Documents, and other related documents to be delivered or received by using the United States Postal Service or a private or commercial interstate carrier in furtherance of the scheme or artifice to defraud Defendants.

(4)     Plaintiffs used or caused the use of the mails or knew the use of the mails was likely.

(5)     The foregoing mailings constituted separate indictable acts of mail fraud which were undertaken as part of the pattern of racketeering performed by the Plaintiffs having the purpose to defraud.

-15-

32.

More specifically, Plaintiffs have committed offenses under 18 U.S.C. § 1343 as follows:

(1)    During the relevant period, Plaintiffs devised or participated in a scheme or artifice to defraud and obtain substantial sums of money from Defendants by false pretenses and representations to charge or collect usurious interest.

(2)    Each of the Plaintiffs acted willfully and with an intent to defraud or aided, abetted, counseled, commanded, induced, or procured the commission of the scheme or artifice to defraud.

(3)    Plaintiffs used interstate wire transmissions, including telephone, facsimile and e-mail communications, to initiate, receive, or participate in numerous communications with Defendants and others related to the loan transactions at issue, including Plaintiffs' attempted exercise of the Minimum Payment Option in furtherance of the scheme or artifice to defraud Plaintiffs.

(4)    The foregoing wire communications constituted separate indictable acts of wire fraud which were undertaken as part of the pattern of racketeering performed by Plaintiffs having the purpose to defraud.

33.

Commission of mail and wire fraud constitute conduct within the meaning of "racketeering activity" as defined by 18 U.S.C. § 1961(1)(a) and therefore constitute racketeering activity within the meaning of O.C.G.A. § 16-14-3(9)(A)(xxix).

34.

Plaintiffs have engaged in the conduct described above with the specific intent of obtaining unlawful monies and in furtherance of the scheme described above.

35.

Plaintiffs participated in the collection of an unlawful debt, theft by taking, and mail and wire fraud in violation of Georgia's RICO statutes, and they participated in and conducted the affairs of the enterprise through a pattern of racketeering activity by committing multiple incidents of racketeering activity having the same or similar intents, results, accomplices, methods of commission, and the same victim, which incidents are not isolated, in violation of O.C.G.A. § 16-14-4.

36.

As described above, Defendants have been injured by reason of Plaintiffs' pattern of racketeering activity and other offenses, in an amount to be proved at trial (including a forfeiture by Plaintiffs of any interest obtained on the loans at issue) in addition to other losses, costs, and damages to be proved at trial.

37.

Defendants are entitled to recover three times their actual damages sustained, plus punitive damages, attorneys fees and reasonable costs of investigation and litigation, as provided in O.C.G.A. § 16-14-6(c).

## Count V – Attorneys' Fees

38.

Defendants incorporate by reference the allegations contained in paragraphs 1 through 37 above as if fully stated herein.

39.

Plaintiffs have acted in bad faith and been stubbornly litigious and caused Defendants unnecessary trouble and expense, for which Plaintiffs are entitled to recover their costs and expenses, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

### Demand for Jury Trial

Defendants respectfully demand a trial by jury as to all claims triable by jury.

### Prayer for Relief

WHEREFORE, Defendants respectfully request that the Court:

(a)     Dismiss Plaintiffs' Complaint with prejudice and find in favor of Defendants against Plaintiffs on all claims therein;

(b)     Enter judgment on Count I of the Counterclaim in favor of Defendants and against Plaintiffs in an amount to be determined by the trier of fact;

(c)     Enter judgment on Count II of the Counterclaim in favor of Defendants and against Plaintiffs in an amount to be determined by the trier of fact;

(d)     Enter judgment on Count III of the Counterclaim imposing liability on Plaintiffs jointly and severally for all amounts awarded;

(e)     Enter judgment on Count IV of the Counterclaim in favor of Defendants and against Plaintiffs in an amount to be determined by the trier of fact, including treble damages;

(f)     Award pre-judgment and post-judgment interest as provided by law;

(g)     Award Defendants their costs associated with this action;

(h)     Award Defendants their reasonable attorneys' fees and expenses of litigation as provided in O.C.G.A. § 16-14-6 and § 13-6-11;

(i)     Award Defendants such other and further relief as the Court deems just and

proper.

This 16th day of September, 2009.

Respectfully submitted,

PARKER HUDSON RAINER & DOBBS LLP

Ronald T. Coleman, Jr., Esq.
Georgia Bar No. 177655
C. Melissa Ewing, Esq.
Georgia Bar No. 253383

285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES** upon all parties in this matter by depositing a true copy of same in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr & Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363

This 16th day of September, 2009.

Ronald T. Coleman
Georgia Bar No. 177655

# EXHIBIT A

## AMENDMENT AGREEMENT

THIS AMENDMENT AGREEMENT (this "Amendment") is dated as of December 20, 2007, among **BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.**, a Mississippi corporation (the "Borrower") and the "Lenders" signatory to this Amendment below (collectively, the "Lenders");

### W I T N E S S E T H :

WHEREAS, the Borrower and the Lenders are parties to that certain Loan Agreement, dated as of March 26, 2007 (the "Loan Agreement");

WHEREAS, the Borrower and the Lenders have agreed to amend certain provisions of the Loan Agreement and the other Loan Documents, subject to the terms and conditions hereof;

NOW, THEREFORE, for and in consideration of the above premises and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged by the parties hereto, the Borrower and the Lenders hereby covenant and agree as follows:

1.     Definitions.  Unless otherwise specifically defined herein, each term used herein which is defined in the Loan Agreement shall have the meaning assigned to such term in the Loan Agreement. Each reference to "hereof", "hereunder", "herein" and "hereby" and each other similar reference.

2.     Amendments.  (a)     The Loan Agreement is amended as follows:

(i)     Each reference to "Warrant Agreement" in the Loan Agreement refers to each Warrant to Purchase Common Stock issued by Borrower to each Lender dated on or about March 26, 2007, as amended from time to time, including, without limitation, by this Amendment.

(ii)     Each reference to "Term Note" in the Loan Agreement refers to each term note issued by Borrower to each Lender dated on or about March 26, 2007, as amended from time to time, including, without limitation, by this Amendment.

(iii)     Section 1 (c) of the Loan Agreement is hereby amended and restated in its entirety as follows:

(c)     Interest.  The rate of interest on the Term Loan shall be 12% per annum based upon a 360-day year, except that the rate of interest shall be 15% per annum for the months of November and December, 2007 and January and February 2008.  With the exception of the interest payment for November 2007 and accrued default consideration through October 30, 2007,   which shall both be added to the outstanding principal balance, interest shall be paid monthly until the Term Notes are paid in full.

(iv)     Section 1(e) of the Loan Agreement is hereby amended and restated in its entirety as follows:

(e)     Payment Default Consideration.  If the Borrower incurs a default in payment of any amount due hereunder of more than five (5) days past the payment due date (a "Payment Default"), the rate of interest will increase by 5%, retroactive to the payment due date, for so long as the Payment Default is continuing.

(v)     A new Section 1 (h) of the Loan Agreement is hereby added as follows:

(h)     All loan and debt obligations due Jeffrey A. Morse, including to any family members and/or controlled entities, shall become subordinated to all payment obligations due hereunder.

(vi)     Section 3(a) of the Loan Agreement is hereby amended and restated in its entirety as follows:

(a)     Financial Reports and Other Data.  Furnish the Lenders with each of the following: (i) as soon as available, but in any event not later than twenty (20) days after the end of each month, unaudited financial statements concerning its business for such calendar month and for the Borrower's fiscal year to date on a consolidated basis as necessary in conformity with GAAP, including profit and loss statements, balance sheets, an operating statistical report and a financial covenant compliance certificate in the form attached hereto as Exhibit D and such other accounting data in a format and in such detail as the Lenders shall request; (ii) as soon as available, but in any event not later than one hundred twenty (120) days after the end of each fiscal year of the Borrower, annual unqualified compiled (starting with 2006) and audited (starting with 2007 fiscal year) financial statements of the Borrower prepared on a consolidated basis, including balance sheets, statements of operations, changes in financial position, stockholder equity and (iii) such other accounting data as Lenders may request. No later than the twenty fifth (25th) day after each month, Borrower shall make its senior executives available to Lenders via a conference call to discuss Borrower's financial performance for the previous month.

(vii)     Section 3(e) of the Loan Agreement is hereby amended and restated in its entirety as follows:

(e)     Insurance. Keep its business and properties insured at all times by responsible insurance companies to the extent that provision for such insurance is usually made by other entities engaged in similar businesses similarly situated and to the extent satisfactory to the Lenders.

(viii)     A new Section 3(l) is hereby added to the Loan Agreement as follows:

(l)     Pay approximately $340,000 in past-due federal payroll tax liabilities  on or before December 31, 2007, and pay an additional approximately $52,260 no later than by January 31, 2008, therefore becoming current with all past-due, non-rescheduled federal payroll tax liabilities.

(ix)     Section 8 (g) of the Loan Agreement is hereby amended and restated in its entirety as follows:

(g)     The Borrower agrees to reimburse the Lenders for all reasonable expenses incurred by the Lenders, including attorney's fees related to the preparation of the original Loan Documents ($3,374) and any amendments thereafter to the original Loan Documents, and expenses, including attorneys' fees, in the collection of any indebtedness incurred hereunder upon the occurrence and continuation of an Event of Default or a Payment Default by Borrower.

(x)     A new Exhibit D is hereby attached to the Loan Agreement in the form of Exhibit D attached to this Amendment.

(b)     Each Term Note issued by the Borrower in favor of each Lender is amended as follows:

(i)     Section 2 of the Note is hereby amended and restated as follows:

252288 v1

2.      PAYMENTS. Interest shall be paid monthly on the last day of each calendar month until the Term Note is paid in full, except that interest due on November 30, 2007 for the month of November, together with accrued default consideration through October 30, 2007, shall be added to the outstanding principal balance as per Exhibits E and F.  Payments of principal shall be made as follows: equal monthly installments on the last day of each calendar month with the first such payment due on April 30, 2007 and the last such payment due  on March 31, 2009, with the exception that the remaining principal balance due as of the date of this Amendment, which includes November interest due and accrued default consideration through October 31, 2007 added to the principal balance, shall be made as follows: twelve (12) equal monthly payments on the last day of each calendar month with the first such payment due on March 31, 2008 and the last such payment due on February 28, 2009, and a final balloon payment equal to three (3) monthly payments shall be made on March 31, 2009 as per Exhibits E and F. If not sooner paid, the entire remaining unpaid principal balance under this Term Note, and all accrued and unpaid interest thereon, shall become due and payable in full on March 31, 2009.

(ii)     Section 3 of the Note is hereby amended and restated in its entirety as follows:

3.      PAYMENT DEFAULT CONSIDERATION. If the Borrower incurs a default in payment of any amount due of more than five (5) days past due the payment due date (a "Payment Default"), the rate of interest will increase by 5%, retroactive to the payment due date, for so long as the Payment Default is continuing.

(c)     Section 11 of each Warrant Agreement is hereby amended and restated in its entirety as follows:

11.      Adjustments to Warrant Stock and Minimum Payment Option Amount Upon Payment Default under the Loan Agreement. Upon Company's failure to make any payment of principal, interest or any other amount due by Borrower to the Lenders under the Loan Agreement and such failure continues (a) for more than twenty five (25) days past the due date therefor, then, in such event, (i) the number of Warrant Stock shares issuable hereunder to the Holder shall be increased by 25% and (ii) the Minimum Payment Option amount shall be increased by 25% and (b) for more than ninety (90) days past the due date therefor (or an additional failure to pay under the Loan Agreement occurs thereafter and continues for more than twenty five (25) days, regardless of any cure of any previous failure to pay), then, in such event, (i) the number of Warrant Stock shares issuable hereunder to the Holder shall be increased by 200% and (ii) the Minimum Payment Option amount shall be increased by 200%.

3.      Restatement of Representations and Warranties. The Borrower hereby restates and renews each and every representation and warranty heretofore made by it in the Loan Agreement and the other Loan Documents as fully as if made on the date hereof and with specific reference to this Amendment and all other Loan Documents executed and/or delivered in connection herewith.

4.      Effect of Amendment. Except as set forth expressly hereinabove, all terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents shall be and remain in full force and effect, and shall constitute the legal, valid, binding and enforceable obligations of the Borrower.  The amendments set forth in Section 2 hereof shall be deemed to have prospective application only, unless otherwise specifically stated herein. Notwithstanding the foregoing, the amendments hereby granted by the Lenders shall not (i) apply to any other past, present or future noncompliance with any provision of the Loan Agreement or any of the other  Loan Documents, (ii) impair or otherwise adversely affect the Lenders' right at any time to exercise any right or remedy in connection with the Loan Agreement or any of the other  Loan Documents, or (iii) except as set forth in Section 2 above, amend, modify or otherwise alter any provision of the Loan Agreement or any of the other Loan Documents, or constitute any course of dealing or other basis for amending, modifying or otherwise altering any

4

obligations of the Borrower or any other party under the Loan Agreement or any of the other Loan Documents.

5.      No Novation or Mutual Departure. The Borrower expressly acknowledges and agrees that: (i) there has not been, and this Amendment does not constitute or establish, a novation with respect to the Loan Agreement or any of the Loan Documents, or a mutual departure from the strict terms, provisions and conditions thereof, other than the amendments set forth in Section 2 hereof; and (ii) nothing in this Amendment shall affect or limit the Lenders' right to demand payment of liabilities owing from the Borrower to the Lenders under, or to demand strict performance of the terms, provisions and conditions of, the Loan Agreement and the other Loan Documents, to exercise any and all rights, powers and remedies under the Loan Agreement or the other Loan Documents or at law or in equity, or to do any and all of the foregoing, immediately at any time after the occurrence of an Event of Default, pursuant to the Loan Agreement or the other Loan Documents.

6.      Ratification and Reaffirmation. The Borrower hereby restates, ratifies and reaffirms each and every term, covenant and condition set forth in the Loan Agreement and the other Loan Documents effective as of the date hereof.

7.      Counterparts. This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts and transmitted by facsimile to the other parties, each of which when so executed and delivered by facsimile shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument.

8.      Section References. Section titles and references used in this Amendment shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreements among the parties hereto evidenced hereby.

9.      No Default. To induce the Lenders to enter into this Amendment, the Borrower hereby acknowledges and agrees that, as of the date hereof, and after giving effect to the terms hereof, there exists (i) no Event of Default and (ii) no right of offset, defense, counterclaim, claim or objection in favor of the Borrower arising out of or with respect to any of the Loans or other obligations of the Borrower owed to the Lenders under the Loan Agreement.

10.     Further Assurances. The Borrower agrees to take such further actions as the Lenders shall reasonably request in connection herewith to evidence the amendments herein contained.

11.     Governing Law. This Amendment shall be governed by and construed and interpreted in accordance with, the laws of the State of Georgia.

12.     Conditions Precedent. This Amendment shall become effective only upon (a) execution and delivery of (i) this Amendment by the Borrower and the Lenders and (ii) a Guaranty by Jeffrey A. Morse of the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time substantially in the form attached hereto as Exhibit A and (b) payment of Lenders' outstanding and unpaid legal fees incurred in connection with the Loan Agreement equal to $3,374.00 and additionally incurred in connection with this Amendment when billed in good funds.

[SIGNATURES CONTAINED ON NEXT PAGE]

5

IN WITNESS WHEREOF, the Borrower and each of the Lenders have caused this Amendment to be duly executed, under seal, by its duly authorized officer as of the day and year first above written.

BORROWER:

BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.
d/b/a Choctaw County Medical Center

By: _Jeffrey A. Mause_____
Name: _President, BHS_
Title:

LENDERS:

_____
Philip A. Marsden

_____
Donald R. Millard

HOPPY ENTERPRISES, LLC

By: _____
Name:
Title:

_____
Marshall B. Hunt

_____
Olin Garwood Lippincott

PWP INVESTMENTS, LLC

By: _____
Name:
Title:

## EXHIBIT A

### GUARANTY

THIS GUARANTY (this "Guaranty") is made as of December 20, 2007, by JEFFREY A. MORSE (the "Guarantor"), in favor of the Lenders (as defined below), under the Loan Agreement referred to below;

### WITNESSETH

WHEREAS, BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC., as borrower (the "Borrower") and the following lenders are parties to that certain Loan Agreement dated as of March 26, 2007 (as amended or otherwise modified from time to time, the "Loan Agreement"; along all other lenders party to the Loan Agreement from time to time, the "Lenders"): Philip A. Marsden; Donald R. Millard; Hoppy Enterprises, LLC; Marshall B. Hunt; Olin Garwood Lippincott; and PWP Investments, LLC;

WHEREAS, it is required under the terms of that certain Amendment Agreement, dated as of even date herewith, among Borrower and Lenders (the "Amendment"), that the Guarantor execute and deliver this Guaranty whereby the Guarantor shall guarantee the payment when due of all principal and interest on the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time;

WHEREAS, in consideration of the financial and other support that Borrower has provided, and such financial and other support as Borrower may in the future provide, to Guarantor, whether directly or indirectly, and in order to induce the Lenders to enter into the Amendment, the Guarantor is willing to guarantee all principal and interest on the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time; and

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1. Definitions. Terms defined in the Loan Agreement and not otherwise defined herein have, as used herein, the respective meanings provided for therein.

SECTION 2. Representations and Warranties. The Guarantor represents and warrants that:

(a)     this Guaranty has been duly and validly executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, reorganization or moratorium or other similar laws relating to the enforcement of creditors' rights generally and by general equitable principles.

(b)     neither the execution and delivery by it of this Guaranty nor compliance with the terms and provisions hereof by the Guarantor will conflict with or result in a breach of, or require any consent under, any applicable law or regulation, or any order, writ, injunction or decree of any court or governmental authority or agency, or any material agreement or instrument to which it is a party or by which it is bound or to which it is subject, or constitute a default under any such agreement or instrument, or result in the creation or imposition of any lien upon any of its revenues or assets pursuant to the terms of any such agreement or instrument.

(c)      after giving effect to the execution and delivery of the Loan Documents to which it is a party and the incurring of its obligations hereunder, it will not be "insolvent," within the meaning of such term as defined in § 101 of Title 11 of the United States Code or § 2 of either the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act, as each is amended from time to time, or be unable to pay its debts generally as such debts become due, or have an unreasonably small capital to engage in any business or transaction, whether current or contemplated.

SECTION 3.  The Guaranty.  The Guarantor hereby unconditionally guarantees the full and punctual payment (whether at stated maturity, upon acceleration or otherwise) of all principal and interest on the Term Loan and all other indebtedness and other obligations owed by Borrower to Lenders from time to time under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents from time to time (collectively, the "Obligations").  Upon failure by Borrower to pay punctually any such Obligations, the Guarantor agrees that it shall forthwith on demand pay the amount not so paid at the place and in the manner specified the Loan Agreement, the Term Notes, the Warrant Agreements or any of the other Loan Documents, as the case may be.  This Guaranty is a guaranty of full payment, observance and performance and not of collectibility and in no way conditional or contingent.  Without limiting the generality of the foregoing, this Guaranty is in no way conditioned upon any requirement that Lender first attempt to obtain or collect payment, or seek observance or performance, or any of the Obligations from any person or entity which is or may become directly or indirectly liable or responsible for any of the Obligations, or resort to any other collateral or security or other means of obtaining or collecting payment or seeking observance or performance of any of the Obligations shall give rise to a separate cause of action under this guaranty and separate suits, actions or proceedings any be brought hereunder as and when any such cause of action arises.

SECTION 4.  Guaranty Unconditional.  The obligations of the Guarantor hereunder shall be unconditional and absolute and, without limiting the generality of the foregoing, shall not be released, discharged or otherwise affected by:

(i) any extension, renewal, settlement, compromise, waiver or release in respect of any obligation of Borrower or any other guarantor of the Obligations (each, a "Loan Party") under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, by operation of law or otherwise or any obligation of any other guarantor of any of the Obligations; (ii) any modification or amendment of or supplement to the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents; (iii) any release, subordination nonperfection or invalidity of any part of any collateral securing the Obligations or any other direct or indirect security for any obligation of any of the Loan Parties under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, or any obligations of any other guarantor of any of the Obligations; (iv) any change in the corporate structure or ownership of any of the Loan Parties or any other guarantor of the Obligations, or any insolvency, bankruptcy, reorganization or other similar proceeding affecting any of the Loan Parties, or any other guarantor of the Obligations, or its assets or any resulting release or discharge of any obligation of any of the Loan Parties, or any other guarantor of any of the Obligations; (v) the existence of any claim, setoff or other rights which any of the Guarantors may have at any time against any of the Loan Parties, or any other guarantor of any of the Obligations, the Lenders, or any other person or entity, whether in connection herewith or any unrelated transactions, provided that nothing herein shall prevent the assertion of any such claim by separate suit or compulsory counterclaim; (vi) any invalidity or unenforceability relating to or against any of the Loan Parties, or any other guarantor of any of the Obligations, for any reason related to the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, or any other guaranty, or any provision of applicable law or regulation purporting to prohibit the payment by any of the Loan Parties, or any other guarantor of the Obligations, of the principal of or interest on any Loan or other Obligations under the Loan Agreement or any other Loan Document; (vii) any other act or omission to act or delay of any kind by any of the Loan Parties, or any other guarantor of the Obligations, the Lenders or any other person or entity or any other circumstance whatsoever which might, but for the provisions of this SECTION, constitute a legal or equitable discharge of the obligations of any Guarantor hereunder; or (viii) any and all defenses based on

252288 v1

suretyship or any other applicable law, including without limitation all rights and defenses arising out of (a) an election of remedies by the Lenders even though that election of remedies may have destroyed rights of subrogation and reimbursement against any Loan Party or Guarantor by operation of law or otherwise, (b) protections afforded to any Loan Party or Guarantor pursuant to antideficiency or similar laws limiting or discharging any Loan Party's or Guarantor's obligations to the Lenders, (c) the failure to notify any Loan Party or Guarantor of the disposition of any property securing the obligations of any Loan Party or Guarantor, (d) the commercial reasonableness of such disposition or the impairment, however caused, of the value of such property, or (e) any duty of the Lenders (should such duty exist) to disclose to any Loan Party or Guarantor any matter, fact or thing related to the business operations or condition (financial or otherwise) of any Loan Party or Guarantor or its affiliates or property, whether now or hereafter known by the Lenders.

SECTION 5. <u>Discharge Only Upon Payment In Full; Reinstatement In Certain Circumstances</u>. The Guarantor's obligations hereunder shall remain in full force and effect until all Obligations shall have been paid in full and the commitments under the Loan Agreement shall have terminated or expired. If at any time any payment of any of the Obligations is rescinded or must be otherwise restored or returned upon the insolvency, Bankruptcy or reorganization of Borrower or otherwise (whether by demand, settlement, litigation or otherwise), the Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

SECTION 6. <u>Waiver of Notice by the Guarantor</u>. The Guarantor irrevocably waives acceptance hereof, presentment, demand, protest and, to the fullest extent permitted by law, any notice not provided for herein, as well as any requirement that at any time any action be taken by any party against Borrower, any other guarantor of the Obligations, or any other party.

SECTION 7. <u>Stay of Acceleration</u>. If acceleration of the time for payment of any amount payable by Borrower under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents is stayed upon the insolvency, Bankruptcy or reorganization of Borrower, all such amounts otherwise subject to acceleration under the terms of the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents shall nonetheless be payable by the Guarantor hereunder forthwith on demand by the Lenders.

SECTION 8. <u>Notices</u>. All notices, requests and other communications to any party hereunder shall be given or made by telecopier or other writing and telecopied or mailed or delivered to the intended recipient at its address or telecopier number set forth on the signature pages hereof or such other address or telecopy number as such party may hereafter specify for such purpose by notice to the Lenders in accordance with the provisions of the Loan Agreement. Except as otherwise provided in this Guaranty, all such communications shall be deemed to have been duly given when transmitted by telecopier, or personally delivered or, in the case of a mailed notice, 72 hours after such communication is deposited in the mails with first class postage prepaid, in each case given or addressed as aforesaid.

SECTION 9. <u>No Waivers</u>. No failure or delay by the Lenders in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies provided in this Guaranty, the Loan Agreement, the Term Notes, the Warrant Agreements and the other Loan Documents shall be cumulative and not exclusive of any rights or remedies provided by law.

SECTION 10. <u>Successors and Assigns</u>. This Guaranty is for the benefit of the Lenders and their respective successors and assigns and in the event of an assignment of any amounts payable under the Loan Agreement, the Term Notes, the Warrant Agreements or the other Loan Documents, the rights hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness. This Guaranty may not be assigned by the Guarantor without the prior written consent of

the Lenders (given in compliance with the terms of the Loan Agreement), and shall be binding upon the Guarantor and its successors, estate, and permitted assigns.

SECTION 11. <u>Changes in Writing</u>. Neither this Guaranty nor any provision hereof may be changed, waived, discharged or terminated orally, but only in writing signed by the Guarantor and the Lenders and otherwise in compliance with the terms of the Loan Agreement.

SECTION 12. <u>Governing Law</u>. This Guaranty and the rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Georgia.

SECTION 13. <u>Jurisdiction and Venue</u>. In the event that legal action is instituted to enforce or interpret this Guaranty, or to collect the Term Loan or any other amount due under the Loan Documents, the Guarantor on behalf of itself and its successors and assigns, consents to and by execution of this Guaranty submit itself to, the jurisdiction of the courts of the State of Georgia, and notwithstanding the place of business of the Guarantor or the place of execution of this Guaranty or any of the other Loan Documents, any litigation relating to this Guaranty and to any of the other Loan Documents, whether arising in contract or tort, by statute or otherwise, shall be brought in (and, if brought elsewhere, may be transferred to ) a state court of competent jurisdiction in DeKalb County, Georgia.

SECTION 14. <u>Taxes, etc.</u> All payments required to be made by the Guarantor hereunder shall be made without setoff or counterclaim and free and clear of and without deduction or withholding for or on account of, any present or future taxes, levies, imposts, duties or other charges of whatsoever nature imposed by any government or any political or taxing authority.

SECTION 15. <u>Subrogation</u>. Each Guarantor hereby agrees that it will not exercise any rights which it may acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, unless and until all of the Obligations shall have been paid in full. If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid in full, such amount shall be held in trust for the benefit of the Lenders and shall forthwith be paid to the Lenders to be credited and applied upon the Obligations, whether matured or unmatured, in accordance with the terms of the Loan Agreement.

10

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed, under seal, by its authorized officer as of the date first above written.

_____  (SEAL)
Jeffrey A. Morse

Address:
_413 Bluewater Court_
_Butler, MD 21811_

IN WITNESS WHEREOF, the Borrower and each of the Lenders have caused this Amendment to be duly executed, under seal, by its duly authorized officer as of the day and year first above written.

BORROWER:

BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.
d/b/a Choctaw County Medical Center

By:_____
Name:
Title:

LENDERS:

_____
Philip A. Marsden

_____
Donald R. Millard

HOPPY ENTERPRISES, LLC

By:_____
Name:
Title:

_____
Marshall B. Hunt

_____
Olin Garwood Lippincott

PWP INVESTMENTS, LLC

By:_____
Name:
Title:



5

IN WITNESS WHEREOF, the Borrower and each of the Lenders have caused this Amendment to be duly executed, under seal, by its duly authorized officer as of the day and year first above written.

BORROWER:

BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.
d/b/a Choctaw County Medical Center

By:_____
Name:
Title:


LENDERS:


_____
Philip A. Marsden


_Donald R. Millard_
_____
Donald R. Millard


HOPPY ENTERPRISES, LLC

By:_____
Name:
Title:


_____
Marshall B. Hunt


_____
Olin Garwood Lippincott


PWP INVESTMENTS, LLC

By:_____
Name:
Title:


252288 v1

5

IN WITNESS WHEREOF, the Borrower and each of the Lenders have caused this Amendment to be duly executed, under seal, by its duly authorized officer as of the day and year first above written.

BORROWER:

BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.
d/b/a Choctaw County Medical Center

By: _____
Name:
Title:

LENDERS:

_____
Philip A. Marsden

_____
Donald R. Millard

HOPPY ENTERPRISES, LLC
By: _____
Name: TRUMMIE L PATRICK
Title: MAN, PARTNER

_____
Marshall B. Hunt

_____
Olin Garwood Lippincott

PWP INVESTMENTS, LLC

By: _____
Name: TRUMMIE L. PATRICK
Title: MAN PARTNER

252288 v1

p.2



5

IN WITNESS WHEREOF, the Borrower and each of the Lenders have caused this Amendment to be duly executed, under seal, by its duly authorized officer as of the day and year first above written.

BORROWER:

BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.
d/b/a Choctaw County Medical Center

By:_____
Name:
Title:

LENDERS:

_____
Philip A. Marsden

_____
Donald R. Millard

HOPPY ENTERPRISES, LLC

By:_____
Name:
Title:

_____   MARSIDD)) Hunt
Marshall B. Hunt

_____
Olin Garwood Lippincott

PWP INVESTMENTS, LLC

By:_____
Name:
Title:

252288 v1

5

IN WITNESS WHEREOF, the Borrower and each of the Lenders have caused this Amendment to be duly executed, under seal, by its duly authorized officer as of the day and year first above written.

BORROWER:

BRANDYWINE HEALTH SERVICES OF MISSISSIPPI, INC.
d/b/a Choctaw County Medical Center

By:_____
Name:
Title:

LENDERS:

_____
Philip A. Marsden

_____
Donald R. Millard

HOPPY ENTERPRISES, LLC

By:_____
Name:
Title:

_____
Marshall B. Hunt

_____
Olin Garwood Lippincott

PWP INVESTMENTS, LLC

By:_____
Name:
Title:

252288 v1

**Exhibit D**

**Certificate of Loan Agreement Compliance**

To:    Unsecured Lenders    From:  Brandywine Health Services of Mississippi, Inc.
        ("Lenders")             (the "Borrower")
        Loan Documents          148 West Cherry Street
        Dated 3/26/07           Ackerman, MS 39735

Date: _____.    Certificate of Loan Agreement Compliance for _____.
                                         (month, year)

**I. Financial Reporting:**  Financial statements and operating statistics for the month ended _____ 200_, have been provided to the Lenders by BHS within 20 days of month end, as required.

**II. Loan Agreement Compliance:** The Borrower is in compliance with all terms and conditions of the Loan Documents dated March 26, 2007.

**III. IRS Payroll Tax Liability Payments:** The Borrower is current with all monthly payment obligations and on-going bi-weekly obligations due the IRS.

**IV. Compliance with Asset-based Loan Agreement:** Based upon no notification to the contrary of which the Borrower is aware, it believes that it is in compliance with all terms and conditions of the Northern Healthcare Capital ("NHC") loan agreement.

**V. Revolver Borrowing Base Availability:**  As of the date most recently reported to NHC (_____), the Borrower has:

Total Revolver Availability of _____,

Revolver loan outstandings of _____, and

Remaining Revolver availability of _____.

The undersigned hereby certifies that all of the information provided above is true and accurate as of the date identified above.

_____
Jeffrey A. Morse
President and CEO

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R. )
MILLARD, HOPPY ENTERPRISES, LLC, )
MARSHALL B. HUNT, OLIN GARWOOD )
LIPPINCOTT and PWP INVESTMENTS, LLC, )
)
)
)                                    CIVIL ACTION FILE
　　　　　Plaintiffs,                 )       FILE NO. 09A09420-6
)
)
)
v.                                   )
)
)
)
BRANDYWINE HEALTH SERVICES OF )
MISSISSIPPI, INC., d/b/a CHOCTAW
COUNTY MEDICAL CENTER and JEFFREY
A. MORSE,


　　　　　Defendants.

---

### RULE 5.2 CERTIFICATE OF SERVICE OF DISCOVERY

---

I HEREBY CERTIFY that I have on this 2nd day of November served the following:

1.　　Plaintiff's First Interrogatories and Request for Production of Documents to

Defendant Jeffrey A. Morse; and

2.　　Plaintiff's First Interrogatories and Request for Production of Documents to

Defendant Brandywine Health Services of Mississippi, Inc., d/b/a Choctaw County Medical

Center

302716 v1

by depositing a true and correct copy of same in the United States Mail, in a properly

addressed envelope with adequate postage thereon to all counsel of record as follows:

Ronald T. Coleman, Jr., Esq.
C. Melissa Ewing, Esq.
Parker Hudson Rainer & Dobbs, LLP
285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300

WILLIAM C. COLLINS, JR.
Georgia State Bar No. 178847
JOHN MICHAEL KEARNS
Georgia State Bar No. 142438
JODI M. DIXON
Georgia State Bar No. 208180
Attorneys for Plaintiffs

BURR & FORMAN LLP
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Telecopier: (404) 817-3244

302716 v1                               2

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November I served the foregoing Rule 5.2 Certificate of Discovery by depositing a true and correct copy of same in the United States Mail, in a properly addressed envelope with adequate postage thereon to all counsel of record as follows:

Ronald T. Coleman, Jr., Esq.
C. Melissa Ewing, Esq.
Parker Hudson Rainer & Dobbs, LLP
285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300

Jodi M. Dixon
Georgia State Bar No. 208180
Attorney for Plaintiffs

BURR & FORMAN LLP
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Telecopier: (404) 817-3244

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R. )
MILLARD, HOPPY ENTERPRISES, LLC, )
MARSHALL B. HUNT, OLIN )
GARWOOD LIPPINCOTT and PWP )
INVESTMENTS, LLC, )
)
    Plaintiffs, )   Civil Action File No. 09A09420-6
)
v. )
)
BRANDYWINE HEALTH SERVICES OF )
MISSISSIPPI, INC., d/b/a CHOCTAW )
COUNTY MEDICAL CENTER and )
JEFFREY A. MORSE, )
)
    Defendants. )

STATE COURT OF
DEKALB COUNTY, GA

2009 DEC -7

FILED

## CONSENT STIPULATION EXTENDING TIME
## TO RESPOND TO WRITTEN DISCOVERY

    Plaintiffs and Defendants, by and through their respective counsel of record, hereby stipulate and agree that Defendants shall have an extension of time to respond to Plaintiffs' First Interrogatories and Request for Production of Documents to each Defendant until seven days following either party's notice that settlement negotiations have been terminated.

    Stipulated and agreed to this 7th day of December, 2009 by:

BURR & FORMAN LLP

William C. Collins, Jr., Esq.
Georgia Bar No. 178847
John Michael Kearns, Esq.
Georgia Bar No. 142438
Suite 1100
171 17th Street, N.W.
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244
**Attorneys for Plaintiffs**

PARKER HUDSON RAINER & DOBBS LLP

Ronald T. Coleman, Jr., Esq.
Georgia Bar No. 177655
C. Melissa Ewing, Esq.
Georgia Bar No. 253383
285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
**Attorneys for Defendants**

1361867_1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **Consent Stipulation Extending Time To Respond To Written Discovery** upon all parties in this matter by depositing a true copy of same in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

>William C. Collins, Jr., Esq.
>John Michael Kearns
>Burr & Forman LLP
>Suite 1100
>171 17th Street, NW
>Atlanta, Georgia 30363

This 7th day of December, 2009.

_____
Ronald T. Coleman, Jr.

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| PHILIP A. MARSDEN, DONALD R.<br>MILLARD, HOPPY ENTERPRISES, LLC,<br>MARSHALL B. HUNT, OLIN<br>GARWOOD LIPPINCOTT and PWP<br>INVESTMENTS, LLC, | )<br>)<br>)<br>)<br>)<br>) |
|     Plaintiffs, | )<br>) Civil Action File No. 09A09420-6 |
| v. | )<br>) |
| BRANDYWINE HEALTH SERVICES OF<br>MISSISSIPPI, INC., d/b/a CHOCTAW<br>COUNTY MEDICAL CENTER and<br>JEFFREY A. MORSE, | )<br>)<br>)<br>)<br>) |
|     Defendants. | ) |

STATE COURT OF
DEKALB COUNTY, GA
2009 DEC 23  PM 3:45
FILED

## NOTICE OF FILING OF NOTICE OF BANKRUPTCY

The undersigned counsel of record for Defendant Brandywine Health Services of Mississippi, Inc. d/b/a Choctaw County Medical Center, defendant in the above-styled action, hereby submits this Notice of Filing of the attached Notice of Bankruptcy which was prepared and submitted by counsel for Brandywine in the bankruptcy proceeding, J. Walter Newman, IV, MSB No. 3832, Newman & Newman, 248 East Capitol Street, Suite 539, Jackson, Mississippi 39201, (601) 948-0586.

This 23rd day of December, 2009.

                    Respectfully submitted,

                    **PARKER HUDSON RAINER & DOBBS LLP**

                    Ronald T. Coleman, Jr., Esq.
                    Georgia Bar No. 177655
                    C. Melissa Ewing, Esq.
                    Georgia Bar No. 253383

285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300

Attorneys for Defendants

## IN THE STATE COURT OF DEKALB COUNTY
### STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R.
MILLARD, HOPPY ENTERPRISES, LLC,
MARSHALL B. HUNT, OLIN
GARWOOD LIPPINCOTT and PWP
INVESTMENTS, LLC                                                    **PLAINTIFFS**

                                                    CIVIL ACTION NO. 09A09420-6

BRANDYWINE HEALTH SERVICES OF
MISSISSIPPI, INC. d/b/a CHOCTAW
COUNTY MEDICAL CENTER AND
JEFFREY MORSE                                                       **DEFENDANTS**

### NOTICE OF BANKRUPTCY

You are hereby noticed that Brandywine Health Services of Mississippi, Inc. d/b/a Choctaw

County Medical Center has filed for relief under Title 11 of the United States Bankruptcy Code on

December 14, 2009, Case Number 09-16528 in the United States Bankruptcy Court, Northern

District of Mississippi.

DATED:        December 22, 2009.

By: _____
J. WALTER NEWMAN, IV

NEWMAN & NEWMAN
J. Walter, Newman, IV, MSB No. 3832
248 East Capitol Street, Suite 539
Jackson, Mississippi  39201
(601) 948-0586
Attorney for Debtor

## CERTIFICATE OF SERVICE

I, J. WALTER NEWMAN, IV, do hereby certify that I have this day served by United States mail, postage prepaid, a true and correct copy of the above and foregoing Notice of Bankruptcy to the following at their usual business address:

William C. Collins, Jr., Esq.
John Michael Kearns
Burr & Forman LLP
171 17th Street, NW, Ste. 1100
Atlanta, Ga 30363

Office of the United States Trustee
Suite 706 A. H. McCoy Federal Bldg.
100 West Capitol Street
Jackson, Mississippi 39269

Dated this the 22nd day of December, 2009.

_____
J. WALTER NEWMAN, IV

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **NOTICE OF FILING OF NOTICE OF BANKRUPTCY** upon all parties in this matter by depositing a true copy of same in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr& Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363
>
> Newman & Newman
> J. Walter Newman, IV, MSB No. 3832
> 248 East Capitol Street, Suite 539
> Jackson, Mississippi 39201
>
> Office of the United States Trustee
> Suite 706 A.H. McCoy Federal Bldg.
> 100 West Capitol Street
> Jackson, Mississippi 39269

This 23rd of December, 2009.

Ronald T. Coleman
Georgia Bar No. 177655

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

PHILIP A. MARSDEN, DONALD R. )
MILLARD, HOPPY ENTERPRISES, LLC, )
MARSHALL B. HUNT, OLIN )
GARWOOD LIPPINCOTT and PWP )
INVESTMENTS, LLC, )
)
      Plaintiffs, )   Civil Action File No. 09A09420-6
)
v. )
)
BRANDYWINE HEALTH SERVICES OF )
MISSISSIPPI, INC., d/b/a CHOCTAW )
COUNTY MEDICAL CENTER and )
JEFFREY A. MORSE, )
)
      Defendants. )

### RULE 5.2 CERTIFICATE

Pursuant to Uniform State Court Rule 5.2, I hereby certify that on December 24, 2009, I

have caused a copy of **"OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST**

**INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO**

**DEFENDANT JEFFREY A. MORSE"** to be served upon all parties to this matter via U.S.

Mail, proper postage pre-paid, addressed to counsel of record as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr& Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363

Respectfully submitted this 24th day of December, 2009.

**PARKER HUDSON RAINER & DOBBS LLP**

*Ronald T. Coleman, Jr.* /by TLP w/ express permission

Ronald T. Coleman, Jr., Esq.
Georgia Bar No. 177655
C. Melissa Ewing, Esq.
Georgia Bar No. 253383

285 Peachtree Center Avenue, N.E.
1500 Marquis Two Tower
Atlanta, Georgia 30303
Telephone: (404) 523-5300

Attorneys for Defendants

STATE COURT OF
DEKALB COUNTY, GA

2009 DEC 28  AM 10: 09

FILED

2  *M. Brown*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **RULE 5.2**

**CERTIFICATE** upon all parties in this matter electronically and by depositing a true copy of

same in the U. S. Mail, proper postage prepaid, addressed to all parties to this matter as follows:

> William C. Collins, Jr., Esq.
> John Michael Kearns
> Burr& Forman LLP
> Suite 1100
> 171 17th Street, NW
> Atlanta, Georgia 30363

This 24th day of December, 2009.

*Ronald T. Coleman, Jr.* /by
JLT
w/ express
permission

Ronald T. Coleman, Jr.
Georgia Bar No. 177655